***********
Upon review of all of the competent evidence of record with references to the errors assigned and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. The Phoenix Fund was the carrier on the risk with National Benefits America as its third-party administrator.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The date of the alleged injury was June 19, 2002. Defendants filed an I.C. Form 60 to accept compensability of the claim on July 18, 2002, pursuant to which they have continued to pay benefits.
5. Plaintiff's average weekly wage was $576.20, which yields a compensation rate of $384.15 per week.
6. The parties stipulated the into the evidence of record at the hearing before Deputy Commissioner Dollar:
a. Stipulated Exhibit 1 — Medical Records,
b. Stipulated Exhibit 2 — Defendants' Answers to Interrogatories,
c. Stipulated Exhibit 3 — Plaintiff's Answers to Interrogatories,
d. Stipulated Exhibit 4 — Deposition transcript of Joseph Finley Cardwell, III,
e. Stipulated Exhibit 5 — Affidavit of Mr. Cardwell, and
f. Stipulated Exhibit 6 — Videotape of Mr. Cardwell's deposition.
g. Plaintiff's Exhibit 1 — Plaintiff's thirty day review dated June 11, 2002
h. Plaintiff's Exhibit 2 — Police report regarding altercation between plaintiff and Kevin Bowman
i. Plaintiff's Exhibit 3 — Police report by plaintiff regarding stolen items
j. Plaintiff's Exhibit 4 — Accident report prepared by Paul Moretz
k. Plaintiff's Exhibit 5 — Plaintiff's accident report
l. Plaintiff's Exhibit 6 — Industrial Commission Form 60
m. Defendant's Exhibit 1 — Plaintiff's personnel file
n. Defendant's Exhibit 2 — Health Questionaire
o. Defendant's Exhibit 3 — 22 photographs depicting upholstery trimmers' work area
p. Defendant's Exhibit 4 — Disciplinary report dated June 18, 2002
q. Defendant's Exhibit 5 — Statement of David Wayne Murphy dated August 5, 2002
r. Defendant's Exhibit 6 — Transcript of plaintiff's recorded statement by Nanci Lewis dated June 26, 2003
7. The issues for determination are:
a. Whether plaintiff sustained a compensable injury by accident and/or whether defendants are estopped from revoking acceptance,
b. Should defendants be sanctioned for unfounded litigiousness regarding denial of the I.C. Form 24 and denial of benefits after having accepted the claim on a Form 60,
c. Is plaintiff barred from recovery of benefits under the Act as a consequence of completing a fraudulent employment application,
d. Are plaintiff's medical problems related to his July 19, 2002 accident?
e. To what amount of attorney's fees and sanctions are the parties entitled?
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was thirty-nine years old at the time of the hearing before the Deputy Commissioner and had obtained his G.E.D. He had worked approximately 14 years in the furniture industry as an upholsterer.
2. In February of 2001, plaintiff traveled to Peoria, Illinois, to pack, load, move and unload into storage his ex-wife's household furnishings. During the course of this activity, he began to experience low back pain which radiated to his left leg.
3. Plaintiff sought treatment at Burke Primary Care on April 13, 2001 for his low back pain and was given Vioxx and Flexeril. He returned on May 14, 2001 at which time Physician's Assistant Bill Vaassen noted plaintiff had also sought chiropractic adjustments in the interim for relief of back pain. Mr. Vaassen suspected a herniated disk at L5-S1, and he prescribed Prednisone and Ultram for back and left leg pain. An MRI was also ordered. On May 18, 2001, Mr. Vaassen prescribed Vicodin after plaintiff was unable to tolerate Ultram. Vioxx was also continued.
4. On May 29, 2001, plaintiff sought treatment with orthopedic surgeon Dr. Mark L. Moody for the intractable left lower leg pain. An MRI revealed a large disc herniation at left L6-S1. Plaintiff was found to have a congenital abnormality, the presence of an L6 vertebra.
5. Dr. Moody performed a microlumbar diskectomy at left L6-S1 on June 6, 2001, in which a 2-cm. incision was made. Post-operatively, plaintiff's left leg pain resolved. As of August 2, 2001, Dr. Moody prescribed Vioxx for pain and a muscle relaxant, after which physical therapy was ordered.
6. By August 30, 2001, Dr. Moody noted plaintiff had been working out at the gym, weightlifting, and reported no back pain or leg numbness. He discharged plaintiff from treatment at that time. By January of 2002, plaintiff called Dr. Moody's office for additional Vioxx.
7. On March 1, 2002, plaintiff called Burke Primary Care for a refill of the Vioxx prescription.
8. On or about May 9, 2002, plaintiff applied to work as a trimmer with defendants. Upholstery Supervisor Paul Moretz spoke to plaintiff initially, regarding his prior work experience. Contrary to the assertions plaintiff made in his deposition testimony, at no time during his pre-employment interview did plaintiff disclose to Mr. Moretz his pre-existing back condition or surgery.
9. After completing the application, plaintiff was referred to defendants' administrative office in Newton, where the plant nurse administered a drug test, a health screening and a physical examination. During the health questionnaire, plaintiff told the plant nurse he had no prior back problems and no prior surgery. In the physical examination, plaintiff removed his shirt so the nurse could check his lungs and heart. Although plaintiff had a 2-cm. scar to the left of his spinal column, the scar was primarily at or below belt level and not clearly visible.
10. Defendants hired plaintiff to work as an upholstery trimmer at Chair #5 on May 9, 2002. His duties included upholstering and trimming the outside, arms and seats of chairs. Plaintiff was required to carry a chair to his workbench, walk and move around the workbench to upholster the chair, and then lift the finished piece from the workbench and carry it to the next area.
11. In the first 60 days of hire, all employees are probationary. After six to eight weeks, employees are evaluated to determine if they can be moved to production-based pay. Employees receive health insurance benefits and disability benefits after 90 days on the payroll. Employees also are eligible for leave benefits after 60 days on the payroll.
12. From the onset of his employment with defendants, plaintiff regularly consumed a 12- or 24-pack of Goody's Powders during his eight-hour work shift. He testified in his deposition that he took Goody's Powders for leg pain due to standing. However, the credible evidence in the record supports a finding that plaintiff's coworkers, Mr. Moretz, Joseph Cardwell and David Murphy, observed him moving very stiffly and unable to move his torso from side to side. In addition, plaintiff complained of his back pain to these same coworkers. Plaintiff further offered prescription medication to one of his coworkers. None of these coworkers have any reason to fabricate a story about plaintiff's back problems. The Full Commission finds the testimony of these individuals to be credible.
13. After plaintiff began working with defendants, he talked with coworkers David Murphy and Joseph Cardwell, informing them that he needed additional back surgery, he did not have health insurance and could not otherwise afford to pay for the surgery, and that he might have to have an accident at work and let defendants pay for his back surgery.
14. On May 16, 2002, plaintiff returned to Burke Primary Care, where he reported symptoms and exhibited physical findings of increased radicular left leg pain and numbness similar to those for which Mr. Vaassen treated him in 2001. Plaintiff reported he had been out of Vioxx for a month. He also complained of left trigger thumb. Mr. Vaassen prescribed Prednisone and Vioxx, both anti-inflammatories for these complaints. Mr. Vaassen instructed plaintiff that if his recurrent radicular symptoms persisted, plaintiff should return to his orthopedic surgeon as soon as possible for a surgical evaluation.
15. On June 1, 2002 at around 4:00 p.m., plaintiff called Kevin Bowman. Mr. Bowman bought and sold furniture as a hobby on weekends. He had known plaintiff for approximately one and one-half years, as plaintiff previously bought furniture from him. In fact, plaintiff owed Mr. Bowman money for some pieces he had purchased. Plaintiff approached Mr. Bowman at the storage unit where he operated his business. Plaintiff asked Mr. Bowman to buy some furniture plaintiff offered to sell him. Mr. Bowman told plaintiff to bring the pieces for sale, but then observed that plaintiff had no furniture in his truck. Due to their prior business dealings, plaintiff knew Mr. Bowman dealt primarily in cash and that he closed up generally at 5:00 p.m., at which time Mr. Bowman had the most cash on hand. As Mr. Bowman was putting furniture back in his storage unit, plaintiff picked up an eight — inch lead window weight and struck Mr. Bowman twice in the back of the head and once on the top of the head. Mr. Bowman yelled to his nephew for help, at which time plaintiff fled in his truck.
16. On June 11, 2002, Mr. Moretz evaluated plaintiff's progress, noting he had three tardies, for .60 points. He found plaintiff's extremely low quantity of work needed improvement or plaintiff would never make production. Plaintiff was given a disciplinary warning for his attendance problems.
17. On June 18, 2002, plaintiff received a final written warning after getting two additional points due to his excessive tardiness and absences. Plaintiff was informed he would be terminated if he received any further points in the next 30 days.
18. On June 19, 2002, Mr. Moretz completed an Accident Investigation Report, in which he noted plaintiff reported he was carrying a chair over his head when he started around his workbench. Plaintiff alleged that he slipped on scraps of cloth lying on the floor, causing him to fall on his tailbone.
19. Mr. Moretz referred plaintiff to Dr. Abernathy at Caldwell Industrial Medicine Outpatient Care, where plaintiff reported left leg numbness after having fallen backwards on his coccyx. Dr. Abernathy released plaintiff to return to sedentary work with a ten-pound lifting restriction.
20. On June 25, 2002, defendant-carrier referred this case to National Benefits America to administer the claim. Adjuster Nanci Lewis took plaintiff's recorded statement on June 26, 2002. After she found no inconsistencies between plaintiff's statement and the medical reports, Ms. Lewis filed an I.C. Form 60 accepting the claim on July 17, 2002.
21. On June 29, 2002, plaintiff completed an Accident Report, noting David Murphy and Dan Blevins had witnesses his accident.
22. After Ms. Lewis filed the Form 60, defendant-employer's Human Resources Director, Susan Shook, called Ms. Lewis on July 13, 2002 to report the charges against plaintiff for his assault of Mr. Bowman. Ms. Shook expressed her concerns about whether plaintiff's injuries were due to the alleged June 19, 2002 incident.
23. Defendants terminated plaintiff, effective July 19, 2002 due to his failure to comply with the attendance policy, as he had only been with the employer 41 days and was not eligible for leave benefits. Plaintiff's termination was consistent with company policy, and at that time he was eligible for rehire.
24. On August 5, 2002, defendant-employer received statements from Mr. Murphy and Mr. Cardwell regarding plaintiff's comments to them about needed additional back surgery and his plan to have an accident on the job so defendants would have to pay for the surgery.
25. Defendants filed an I.C. Form 24 Application to Suspend or Terminate Benefits on or about August 14, 2002, and unilaterally terminated plaintiff's temporary total disability benefits shortly thereafter.
26. By Order of the Executive Secretary's Office filed on September 27, 2002, defendants' Form 24 Application was not approved.
27. Based upon the greater weight of the credible evidence, the Full Commission finds plaintiff's testimony not to be credible.
28. Based upon the greater weight of the competent evidence in the record, the Full Commission finds that plaintiff sustained a recurrent herniated disk prior to June 19, 2002 and not as a result of an injury by accident arising out of and in the course of his employment with defendants.
29. The greater weight of the evidence shows that after receiving a final written disciplinary warning on June 18, 2002, plaintiff staged a fall at work to obtain workers' compensation benefits to pay for surgery for the recurrent herniated disk.
30. On July 26, 2002, an arrest warrant was issued for plaintiff in Catawba County for his felonious assault with a deadly weapon, inflicting serious injury on Mr. Bowman. As of June 3, 2003, plaintiff was convicted of this felony charge and placed under 24 months of supervised probation.
31. By Order filed by the Executive Secretary on October 30, 2002, defendants were ordered to pay a ten percent penalty for late payment of benefits after they ceased paying plaintiff's temporary total disability benefits without Commission approval.
32. On November 7, 2002, orthopedic surgeon Dr. Ralph Maxy examined plaintiff for a recurrent disc at L6-S1 and recommended surgery. However, surgery was not scheduled in the fall of 2002, as the carrier did not authorize it.
33. On January 24, 2003, Dr. Maxy performed a revision hemilaminotomy and partial diskectomy.
34. On March 4, 2003, plaintiff sought treatment with Dr. Maxy for complaints of increased low back pain. Dr. Maxy diagnosed plaintiff with an acute lumbar strain and prescribed anti-inflammatories and use of heat/ice packs. In a March 4, 2003 letter, Dr. Maxy wrote plaintiff's counsel to note that plaintiff had called his office on March 3, 2003 to report he was unable to ambulate or travel. Plaintiff failed to appear at the Deputy Commissioner hearing held on March 3, 2003. Plaintiff did not contact his attorney or the Commission to advise of any inability to appear. Therefore, the Commission gives no weight to plaintiff's alleged inability to walk or travel on or about March 3, 2003.
35. Based upon plaintiff's reported history of having fallen backwards on his coccyx, Dr. Maxy felt the fall at work was likely a cause of the recurrent disc herniation. However, as Dr. Maxy's opinion testimony relied on the history of onset of symptoms as reported by plaintiff, which has been rejected as false, Dr. Maxy's causation opinion must be given little weight.
36. When presented with the medical history of the onset of symptoms from the May 16, 2002 evaluation with Burke Primary Care, Dr. Maxy believed plaintiff sustained a reherniation of the disk before May 16, 2002 and not after June 19, 2002.
37. Defendants incurred reasonable expenses related to plaintiff's failure to appear at the hearing before the Deputy Commissioner and for the taking of deposition testimony, in the amount of $2,501.63.
38. On May 11, 2004, Deputy Commissioner Dollar entered on Amended Opinion and Award ordering plaintiff to pay attorney fees in the amount of $34,531.60. The Full Commission finds the award of these fees to be unreasonable.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and the extent of disability. Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682
(1982). Plaintiff has failed to carry the burden of proof to establish he sustained a compensable injury by accident. Rather, the greater weight of the credible evidence in the record shows that plaintiff engaged in intentional fraud and misrepresentation to have defendants pay for the surgery he could not afford on his own. The evidence further shows that defendants reasonably relied on plaintiff's misrepresentations. Therefore, the I.C. Form 60 shall be set aside. N.C. Gen. Stat. §§ 97-17,97-82(b).
2. Defendants are entitled to have plaintiff pay the reasonable expenses related to plaintiff's failure to attend the Deputy Commissioner hearing and thereby necessitating the taking of depositions in this case. Rules 612, 802, N.C. Workers' Compensation Rules.
3. In its discretion the Full Commission does not deem the award to defendants of attorney fees in the amount of $34,531.60 in this matter to be reasonable or proper. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. The I.C. Form 60 is ordered set aside for fraud and misrepresentation on the part of plaintiff.
2. As defendants have previously paid temporary total disability benefits and medical expenses to plaintiff under the I.C. Form 60 which was entered into based upon plaintiff's fraud, they are entitled to recover those expenditures made to or on behalf of plaintiff under this claim.
3. Plaintiff's claim for benefits under the Act is, and the same must be, DENIED.
4. Deputy Commissioner Dollar's Amended Opinion and Award filed on May 11, 2004 is hereby VACATED.
5. Plaintiff shall pay the costs, including defendants' reasonable attorney's fees and expenses, in the amount of $2,501.63.
6. Plaintiff shall pay the costs due the Commission.
7. This claim is hereby referred to the Industrial Commission Fraud Investigations Section for investigation of plaintiff's actions in this matter.
This the 17th day of December 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER LKM/mlb